UNITED STATES of America, Plaintiff–
Appellee, Cross–Appellant (90–1260),

v.

Ronald HODGES (90–1124/1260),
Defendant–Appellant,
Cross–Appellee,

Robert Hodges (90–1154),

Timothy Hodges (90–1155),
Defendants–Appellants.

Nos. 90–1124, 90–1154, 90–1155
and 90–1260.

United States Court of Appeals,
Sixth Circuit.

Argued March 11, 1991.

Decided June 7, 1991.

Michael Hluchaniuk, Asst. U.S. Atty. (argued), Bay City, Mich., for U.S.

Robert J. Rhead (argued), Midland, Mich., for Ronald Hodges.

Before KRUPANSKY and BOGGS, Circuit Judges, and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

Defendants-appellants Timothy Hodges ("Timothy"), Robert Hodges ("Robert"), and Ronald Hodges ("Ronald"), three brothers, were convicted for their participation in a conspiracy to distribute 500 grams or more of cocaine between August, 1985, and May, 1989, in violation of 21 U.S.C. §§ 841 and 846. Robert was also convicted on four additional counts charging him with distribution of cocaine in February, 1988, and both Robert and Ronald were convicted on another count charging them with distribution of cocaine in June, 1988.

Defendant Timothy, a Saginaw County Deputy Sheriff, argues that the government presented insufficient evidence to support his drug conspiracy conviction and his guideline offense level. All three defendants assert that their right to a jury trial was violated because the court, not the jury, made specific findings as to the quantity of drugs involved in the conspiracy. Defendant Robert makes the same argument with regard to the court's finding that he possessed a firearm in the course of a drug transaction. The government cross-appeals the lower court's refusal to impose a mandatory minimum sentence of ten years on defendant Ronald, as allegedly required by 21 U.S.C. § 841(b). For the reasons that follow, we affirm all of the convictions but remand the case for resentencing of Ronald's conviction under section 841(b).

## I.

The government's case at trial consisted principally of testimony by police officers working undercover and two cocaine traffickers turned government informants.

The testimony of the government's primary witness, Randy Smith, provided the vast majority of the evidence implicating defendants.[1] He testified that he bought cocaine from Robert and Ronald approximately every two weeks between August 1985 and the summer of 1986, involving about 3.5 grams (⅛ ounce) each time. This would result in an amount somewhere around 75 grams. The witness stated that he thereafter increased his purchases to one ounce per month and possibly one ounce per week.[2] Smith was a roommate of Timothy's prior to the drug transactions and up until approximately May of 1987.

The witness also testified that he went with Robert to Pontiac, Michigan in the spring of 1987, at which time they bought ten ounces. In addition, Robert and Timothy used Smith's car, according to Smith, to make three or four other trips to Pontiac to purchase cocaine during that same period. In response to the U.S. Attorney's query as to whether Timothy ever mentioned being involved in his brothers' drug business, Smith said "he had mentioned he was able to taste it," which meant, according to one government witness, that Timothy judged the quality of cocaine for his brothers.

On another occasion, in the latter part of 1987, witness Smith indicated he saw Robert with an estimated 10 to 15 ounces of cocaine after Robert had taken a trip to Flint. According to Smith, on four to six occasions from November of 1987 to April of 1988 he accompanied Robert to the Flint area where they bought an average of ten ounces of cocaine, but he later testified it was anywhere from five to ten ounces for a total of about 35 ounces. Smith also stated that on about ten other occasions either Robert or Ronald (they alternated about equally) dropped off an average of six ounces of cocaine at his house. In conclusion, he testified that a total of about 95 ounces went through his hands as a result of his latest dealings with Robert or Ronald.

If these 95 ounces were added to only the 10 ounces that Smith and Robert obtained in Pontiac, the total would exceed 100 ounces which is equivalent to 2.8 kilograms. There was also testimony by other witnesses indicating that defendants were involved in additional drug transactions.[3] The trial court calculated that the total amount of cocaine involved in the conspiracy fell within the range of at least 2 kilograms but less than 3.5 kilograms. Other facts peculiar to each defendant's involvement in the drug transactions at issue will, in addition to this fact summary, be set forth where pertinent in the discussion below.

## II.

Initially, we point out that most of the issues presented to us in this appeal have been settled by our court or another circuit. Further, the factual findings of the district court and the jury in our opinion are not clearly erroneous and will therefore not be disturbed. The only error we find is one of law. For convenience and clarity, the various issues on appeal are listed under the defendant who is contesting them.

1. Smith was caught selling cocaine to an undercover officer in 1989 and thereafter agreed to cooperate with the police. Thus, most of his testimony at trial pertained to events which happened before he was caught.

2. To a subsequent question by the district attorney which characterized the purchases as weekly, the witness answered yes.

3. In the summer of 1986, undercover officer Rogalle made a number of purchases of cocaine from a person named Demo. Defendant Ronald was present at six of the purchases. On one of these occasions, Ronald was seen leaving Demo's residence after Rogalle had bought cocaine and was spotted about 30 minutes later in a garage with Defendant Robert. Both were searched and both were found to possess money that had been used to buy the cocaine from Demo on that day and on a previous occasion. Moreover, another informant by the name of Frank Lepard testified that he had made several cocaine purchases from Robert and Ronald during 1987.

In the latter part of 1987, Lepard was arrested selling cocaine to an undercover agent and subsequently agreed to be an informant. As part of his cooperation, under the surveillance of police Lepard made five controlled purchases of cocaine from Robert and Ronald in 1988 and 1989. Timothy was present at one of these transactions.

## A. Robert Hodges

Defendant Robert was sentenced to 135 months imprisonment for conspiracy to distribute cocaine and the distribution of cocaine pursuant to 21 U.S.C. §§ 841 and 846. His sentence was on the low end of the applicable guideline range of 135 to 168 months. To get to that range, his sentence was enhanced by the court for possession of a firearm, for his role in the conspiracy, and because of a prior controlled substance conviction.

■ Robert first argues that a jury determination regarding the quantity of drugs in the alleged conspiracy would certainly have resulted in a sentence of incarceration substantially less than that which he received. Robert contends that not only are significant findings made without the benefit of a jury, but in addition he has been deprived of the standard of proof "beyond a reasonable doubt" and the presumption of innocence as to those findings. The fact that a judge is able to increase sentences under a lower standard of proof, according to Robert, "is especially bothersome in this case where the trial court stated on the record that the Government's primary witness, Randy Smith, was ['not all that credible'] and that if it were up to the Court, the Court could not convict based on that testimony." Robert essentially argues that the sentence enhancement violated his sixth amendment right to a jury trial.

Judge Churchill sympathized with Robert and expressed his concerns about the constitutionality of a trial judge's ability to enhance sentences without jury findings on the facts on which those enhancements depend. He noted his concern was especially pronounced in cases where the sentences imposed are quite serious. The trial judge, however, also recognized that the applicable authority seemed to resolve the issue against defendant and ultimately decided to follow precedent.

It is clear that the great weight of authority (if not all cases) holds that the quantity of the drug involved in an illegal transaction is only relevant to the sentence that will be imposed and is not part of the offense. *See, e.g., United States v. McNeese*, 901 F.2d 585, 600–01 (7th Cir. 1990) ("The quantity of the controlled substance is not an essential element of the crimes proscribed under section 841(a)(1) and 846; rather, it is a sentencing issue to be raised after proof of a defendant's underlying guilt."); *United States v. Gibbs*, 813 F.2d 596 (3rd Cir.1987) (amount of drug involved is only relevant to sentence imposed and does not constitute element of offense); *United States v. Wood*, 834 F.2d 1382 (8th Cir.1987) (section 841(b) is nothing more than a sentence enhancement provision, and thus a jury need not make a special determination as to quantity). Nevertheless, each of those cases affirmed the defendant's sentence without addressing the specific issue presented here. *See, e.g., United States v. Moreno*, 899 F.2d 465 (6th Cir.1990) (the court in *Wood* ended its analysis with the conclusion that section 841(b) is only a sentence enhancement provision, and thus it did not address the argument that under the constitution the quantity of drugs had to be determined by a jury).

We rejected Robert's sixth amendment argument, at least implicitly, in *Moreno, supra*. Although the indictment in that case alleged that the defendants conspired to distribute more than five kilograms of cocaine, the jury was instructed that it could choose to return a verdict convicting the defendants of conspiring to distribute *either* 5 kilograms *or* 500 or more grams of cocaine, the latter being a "lesser included offense." The jury chose the latter option. Thereafter, the district court calculated the base offense level of the defendants for a conspiracy to distribute 500 or more grams of cocaine, although the court found by a preponderance of the evidence that the conspiracy involved over five kilograms of cocaine. The trial court reasoned it was bound by the jury's verdict which stated a lesser quantity. *Moreno*, 899 F.2d at 472.

On appeal, we initially agreed with the Eighth and the Third Circuits that section 841(b) sets forth penalty provisions only and does not separate "lesser included offenses." We further stated that the dis-

trict court is not bound by a jury's verdict as to the amount of drugs involved in a particular scheme. Indeed, we held that it is the trial judge's perogative to make such determinations. *Id.* at 473. "Because section 841(b) is a penalty provision only," we reasoned that "a determination of the quantity of cocaine by a preponderance of the evidence ... *satisfies due process....*" *Id.* (emphasis added). Thus, we concluded in *Moreno* that it was lawful for the judge, by the preponderance of the evidence standard, to find the existence of five kilograms of cocaine in the conspiracy and impose a sentence calculated upon that amount even though it was a ten-fold increase in what the jury previously determined.

We recently re-emphasized our position on this issue in *United States v. Sawyers,* 902 F.2d 1217 (6th Cir.1990). In that case, the defendant appealed the district court's denial of his request for a special verdict. We simply concluded:

> There is no merit whatsoever to Sawyer's contention that the court erred in not giving the jury a special verdict question as to the amount of marijuana being grown. Although the amount of marijuana is relevant to the punishment that may be imposed, it is not an element of the offense and is properly left to the court for consideration at the time of sentencing.

902 F.2d at 1219 (citing *Moreno* ).

In sum, our circuit's precedent has explicitly rejected any *due process* argument and implicitly rejected any *sixth amendment* argument defendant Robert is able to make with regard to the judge's ability, once a conviction has been entered, to determine the amounts of drugs involved and sentence accordingly. Thus, our decision here is consistent with *Moreno* and *Sawyers,* and we are not disposed to challenge those authorities. We hold that the district court's sentence enhancement, based on its factual finding as to the amount of drugs involved, did not violate Robert's right to a jury trial.

Defendant Robert also argues that it is a deprivation of his liberty and right to a jury trial to allow the court to determine whether his sentence should be enhanced for possessing a firearm in the scope of a drug transaction. Of course, the cases and principles discussed in connection with the previous issue apply here as well. Hence, defendant is again making an argument against the great weight of authority. Moreover, in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the Supreme Court upheld the constitutionality of Pennsylvania's mandatory Minimum Sentencing Act, which provides that anyone convicted of certain enumerated felonies is subject to a mandatory minimum sentence if the sentencing judge determines, by the preponderance of the evidence, that the defendant visibly possessed a firearm during the commission of the offense. The Court rejected the petitioners' argument that possession of a firearm was an element of the offense that must be established beyond a reasonable doubt. *Id.* at 84–91, 106 S.Ct. at 2415–18. *See also United States v. Martinez,* 902 F.2d 35 (6th Cir.1990) (unpublished opinion).

As with determinations on the quantity of drugs involved, the district court had the perogative, under a preponderance of the evidence standard, to enhance defendant's sentence for possessing a firearm during one or more drug transactions. Judge Churchill's enhancement was based primarily on the testimony of a government witness which it found "not all that credible." However, "[w]e may not disturb the factual findings that underlie the district court's sentencing decisions unless such findings are clearly erroneous." *Moreno,* 899 F.2d at 470 (citing *United States v. Perez,* 871 F.2d 45 (6th Cir.1989)). "Pursuant to the guidelines, possession of a firearm during the commission of the offense establishes a presumption that the possession is connected to the offense." *Moreno,* 899 F.2d at 470. Defendant Robert can only overcome this presumption if he can show that "it is clearly improbable that the weapon was connected with the offense." Application Note 3 to Sentencing Guideline

§ 2D1.1(b)(1).[4] Robert has only made the general and insufficient allegation that the factual finding on the possession of a firearm during a drug transaction would have been different under the "beyond a reasonable doubt" standard of proof. Based on the record, we cannot hold that the district court's findings were clearly erroneous.

## B. Ronald Hodges[5]

■ Based on the finding that the amount of cocaine involved in the conspiracy fell within the range of 2 to 3.5 kilograms, the trial court determined that for Ronald the base offense level under guideline section 2D1.3 was 28 and sentenced him to 78 months imprisonment. The government cross-appeals the district court's refusal to impose a mandatory minimum sentence of ten years (120 months) as allegedly required by 21 U.S.C. § 841(b)(1)(B)(ii)(II). As the government points out, The Anti–Drug Abuse Act of 1988 amended 21 U.S.C. § 846, which deals with the penalties imposed for offenses committed in the course of a conspiracy, to read:

> Any person who ... conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the ... conspiracy.

"The amendment explicitly provided that any mandatory minimum sentences and special parole terms that could be imposed for substantive narcotic offenses under § 841 are also applicable under this section. Thus congressional intent is now clear: '[A]ny penalty that may be imposed for a substantive drug offense may be imposed for [a] conspiracy to commit that offense.'" *McNeese*, 901 F.2d at 602 n. 6

(quoting 134 Cong.Rec. S 17,366 (daily ed. Nov. 10, 1988)).

Therefore, the government is correct in arguing that the penalty provisions in section 841 apply to related section 846 offenses. The penalty for possession with intent to distribute of 500 grams or more of cocaine or for distribution of that amount is found in 21 U.S.C. § 841(b)(1)(B)(ii)(II). That section states that a person convicted of such an offense "shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years." However, if the defendant has been previously convicted of a drug offense he "shall be sentenced to a term of imprisonment which may not be less than 10 years ...."

■ The government filed an information before trial in compliance with 21 U.S.C. § 851(a), alleging the existence of a prior conviction. As no response was filed with respect to this information,[6] the government argues that the trial court was required to impose the increased punishment under section 851(d)(1). But the trial court took the position that the mandatory minimum sentence would apply only to a conspiracy which deals in quantities of 500 grams or more *at one time*, and not to a conspiracy which deals in a number of smaller individual transactions, such as the one at issue, even though the transactions may add up to a total 500 grams or more. The court questioned: "Does Congress intend not only that the sentence for conspiracy be the same but that it be greater for a conspiracy than if the person merely did the very things, all of the very things, and was convicted of them in separate counts that are encompassed within the conspir-

---

**4.** It should be pointed out that our court has stated that "conviction of a firearm offense is not necessary for application of § 2D1.1(b)(1), and the act of possessing a firearm is attributable to a co-conspirator not present at the commission of the offense as long as it constitutes reasonably foreseeable conduct." *United States v. Williams*, 894 F.2d 208, 211 (6th Cir.1990).

**5.** As with Robert, Defendant Ronald argues that the quantity of a controlled substance is an element of an offense charged under section 841

to be proved by the prosecution beyond a reasonable doubt, rather than by a judge. Thus, Ronald argues that he was deprived of his rights of due process and trial by jury under the fifth and sixth amendments. We have, however, already sufficiently addressed his argument.

**6.** Defendant Robert was likewise apparently assessed three criminal history points for having a prior controlled substance conviction. That enhancement is also not contested on appeal.

acy?" Judge Churchill found the answer to be no.[7]

Our circuit's prior decisions do not support Ronald's argument or the district court's reasoning. In *United States v. Sailes*, 872 F.2d 735 (6th Cir.1989), we affirmed the decision of the sentencing judge to use the amount of drugs "involved in the overall scheme" to establish the offense level. *Id.* at 736–37. Likewise, in *Moreno*, *supra*, the drug quantities were established by adding up the drugs sold over the lifetime of the conspiracy. Most recently, in *United States v. Miller*, 910 F.2d 1321 (6th Cir.1990), we again found that "the entire quantity of cocaine attributable to a distribution enterprise *must* be used to establish the base offense level of a conspirator in the undertaking." *Id.* at 1326–27 (emphasis added). Pursuant to precedent, therefore, the district court should have established the quantity of drugs by adding up the total amount sold during the lifetime of the conspiracy.

Once the quantities specified in the statute are established, trial judges are obligated to impose at least the applicable mandatory minimum sentence. *United States v. Martinez–Zayas*, 857 F.2d 122, 130–31 (3rd Cir.1988). In other words, trial courts have no discretion with respect to the application of mandatory minimum sentences. *Id.* at 123. The language of section 841 uses the words "*shall* be sentenced....." (emphasis added). Courts are "not licensed to attempt to soften the clear import of Congress' chosen words whenever [they believe] those words lead to harsh results." *United States v. Locke*, 471 U.S. 84, 95, 105 S.Ct. 1785, 1792, 85 L.Ed.2d 64 (1985). Accordingly, since it is undisputed that at least 500 grams was involved in the conspiracy, the mandatory minimum sentence

provision of section 841(b)(1)(B)(ii)(II) should have been imposed by the sentencing judge.[8]

We therefore hold that the district court erred in refusing to impose the ten year mandatory minimum sentence in connection with Ronald's conviction. Notwithstanding our holding, without expressing an opinion of our own on the subject, we commend the trial judge for expressing his viewpoint on the appropriateness of mandatory minimum sentences. While Judge Churchill should have applied 21 U.S.C. § 841 as interpreted by our court, his comments we believe are the type which Congress intended to encourage as the raw material from which the U.S. Sentencing Commission can continue to satisfy its ongoing obligation to review the adequacy and fairness of the guidelines. The better course, however, would have been to apply the rule as dictated by binding precedent, while accompanying it with a comment of the type which will reach the U.S. Sentencing Commission.

## C. *Timothy Hodges*[9]

Defendant Timothy was sentenced to 51 months imprisonment and 3 years of supervised release, his sentence being based solely on drug trafficking activities occurring within the scope of the conspiracy. While Timothy recognizes that on appeal the evidence establishing his involvement in a conspiracy must be viewed in the light most favorable to the government, he argues that there was insufficient evidence to support his conspiracy conviction. To be found guilty of conspiracy, the government must prove that Timothy was aware of the object of the conspiracy and that he voluntarily associated himself with it to further its objectives. *United States*

---

**7.** Judge Churchill reasoned:

> With a conspiracy, if I conspire to drive 55 miles an hour ten times, I haven't conspired to drive 550 miles an hour. If I conspire to possess 40 grams of drugs 15 times, have I conspired to distribute 600 grams or 40 grams 15 times?

**8.** There seems to be no serious question that Ronald was an active co-conspirator during the entire time for which the amount of drugs was calculated. We therefore need not determine in

this case whether the penalty as to him could have been limited had he been a part of the conspiracy for only a brief time.

**9.** Defendant Timothy raises three issues, one of which has already been discussed. As with Robert and Ronald, Timothy challenges our holdings in *Sailes* and *Moreno* as violative of due process and the right to a trial by jury. We have, however, completely resolved that challenge. *See supra* note 5.

v. *Cooper*, 868 F.2d 1505, 1514 (6th Cir. 1989). Timothy's connection to the conspiracy, however, need only be slight. *United States v. Scartz*, 838 F.2d 876, 880 (6th Cir.1988). He "need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement." *United States v. Christian*, 786 F.2d 203, 211 (6th Cir.1986) (citation omitted).

■ The evidence showed that Timothy took several trips with his brother Robert to obtain cocaine. Moreover, Smith was selling cocaine from a residence he shared with Timothy, and Timothy bought cocaine from Smith on several occasions. During one of Lepard's 1987 purchases of cocaine from Robert and Ronald, Timothy entered the premises wearing his police uniform. There was drug paraphernalia in plain view on the table. Lepard, who later cooperated with the government, was apparently the only one who became alarmed at Timothy's presence.

The facts indicate that a jury could conclude beyond a reasonable doubt that Timothy was aware of the conspiracy. *Cf. Christian*, 786 F.2d at 211 (citation omitted) ("A conviction will not be reversed for lack of evidence that a defendant ... knew each detail of the conspiracy."). The real issue is whether he voluntarily associated himself with the conspiracy in order to further its objectives. There was testimony that he "tasted" cocaine for his brothers, which according to one government witness meant that he tested the drug's quality. Timothy's trips with Robert to pick up cocaine from Robert's supplier could also be considered in furtherance of the conspiracy. On one occasion when Lepard, now turned government informant, was trying to buy drugs under surveillance from Robert at Robert's residence, Timothy handed Lepard a small vial of cocaine and then walked out.

Timothy argues, however, that he was just a "user" of cocaine as evidenced by his disinterest in Lepard's transactions. While he may not have been a central figure in the conspiracy, that is a separate issue. "Participation in the conspiracy's common purpose and plan may be inferred from the defendant's actions and reactions to the circumstances." *Christian*, 786 F.2d at 211 (citation omitted). "Although mere presence alone is insufficient to support a guilty verdict, presence is a material and probative factor which the jury may consider in reaching its decision." *Id.* "A defendant's guilty knowledge *and voluntary participation* may be inferred from surrounding circumstances." *Id.* (citing *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir.1982)) (emphasis added).

When viewed in the light most favorable to the government, the evidence supports the jury's findings that Timothy was a participant and acted in furtherance of the conspiracy's objectives. To find otherwise would embroil us in credibility determinations. *Cf. United States v. Johnson*, 741 F.2d 854, 856 (6th Cir.1984) ("Where several inferences can be drawn from this evidence, the law in this circuit is that 'the evidence ... need not exclude every logical hypothesis other than guilt, but need only be sufficient for a reasonable trier of fact to find that the evidence established guilt beyond a reasonable doubt.' "). While Timothy may not have actively participated in every phase of the conspiracy, such extensive conduct was not required to enable the jury to find that he was a party to the general conspiratorial agreement. *See Christian*, 786 F.2d at 211.

■ Timothy next argues that even assuming he was a member of the alleged conspiracy, "the proper offense level under U.S.S.C.G. § 2D1–1 [sic] (c)(13) was 12 since the only evidence of a transfer involving him was his handing of a vial to informant Lepard which had to contain less than 25 grams." Thus, he should not be convicted on the total amount of drugs sold during the lifetime of the conspiracy. But the revised guideline section 1B1.3 suggests otherwise. It states in part:

(a) ... Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, ... shall be determined on the basis of the following:

(1) all acts and omissions ... aided and abetted by the defendant....

(2) ... all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction....

The commentary that accompanies guideline section 1B1.3 explains:

[T]he applicability of subsection "a(2)" does not depend on whether multiple counts are alleged.... *[I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.*

(emphasis added). *See also* Application Note 1 to Sentencing Guideline § 1B1.3 (The court may consider any relevant conduct including any "jointly-undertaken criminal activity that was reasonably foreseeable by the defendant.").

In harmony with the guidelines, "[t]his court has held that conduct beyond the count of conviction may be considered at the sentencing level." *Moreno,* 899 F.2d at 473 (citing *United States v. Sailes,* 872 F.2d 735 (6th Cir.1989)). Simply put, with respect to drug quantities Congress did not intend to limit the applicable amounts to those in the immediate possession of a defendant. *See United States v. Jenkins,* 866 F.2d 331, 334 (10th Cir.1989) (trial court could properly consider drugs in constructive possession as well as drugs in immediate possession in imposing mandatory minimum sentence under section 841(b)(1)(B)).

At sentencing, the trial court found that the conspiracy involved between 2 and 3.5 kilograms of cocaine, which resulted in a base offense level of 28. The court then found that Timothy was aware of quantities of cocaine in the range of 500 grams to 2 kilograms or that such quantities were reasonably foreseeable to him. Accordingly, Timothy's base offense level was calculated at 26. The trial court's findings are not clearly erroneous given Timothy's relationship with Robert and Ronald, the evidence that he had accompanied Robert on at least three trips to one of the conspiracy's suppliers of cocaine, and his joint occupation of premises with a frequent customer of the business. In sum, based on the factual findings which lead the jury to conclude Timothy was a member of the conspiracy, the judge correctly included in Timothy's offense level all drug quantities involved in that conspiracy that he was aware of or that were reasonably foreseeable to him—even if not specified in the count of conviction.

■ Timothy also argues that his offense level "should have been reduced four levels under U.S.S.C.G. § 3B1.2 since he was clearly the least culpable of the group[,] the evidence justifying *at most* an inference that he knew about his brothers' distribution of cocaine." The district court reduced Timothy's offense level by two levels for being "the least culpable." Section 3B1.2 of the guidelines provides that the offense level of a defendant can be decreased by four levels if the court determines that the defendant's role in the criminal activity was minimal, and by two levels if the defendant's role was minor. The commentary to this section describes a minimal participant as one who is among the "least culpable of those involved in the conduct of a group." Application Note 1 to Sentencing Guideline § 3B1.2. A minor participant is described as one "who is less culpable than most other participants, but whose role could not be described as minimal." Application Note 3 to Sentencing Guideline § 3B1.2.

According to the application notes to guideline section 3B1.2, the four point reduction should be given infrequently—only in instances where the defendant was involved in a single transaction relating to an ongoing scheme and the defendant lacked knowledge of the scope and structure of the scheme. *See, e.g., United States v. Anders,* 899 F.2d 570, 580 (6th Cir.1990) ("Wedle does not qualify as a minimal participant in the offense as the evidence presented fails to conclusively show that she lacked knowledge or understanding of the scope and structure of the enterprise."). Timothy was involved in more

than a single transaction, as he could not conclusively prove that his drug runs with Robert were for his own use. Even so, he clearly had knowledge of the structure of the scheme. Timothy was present during several of the drug purchases. Moreover, Timothy's joint occupation of premises with a frequent customer of the business who was also intimately involved in the drug transactions could itself be seen as a form of participation in the conspiracy; Timothy's conduct contributed to the use of his premises as a base of operations for at least some of the conspiratorial business. While his involvement may have been minor, it was not clearly erroneous to deny Timothy the status of a "minimal" participant. *Cf. Williams*, 894 F.2d at 214 ("The record indicates that Blanton delivered messages, drove Davis to various meetings, and allowed his phone to be used for setting up drug deals, which is consistent with a minor role.").

■ Finally, Timothy argues that "his rendition of his activities regarding this case to the probation agent warranted a reduction of two or more levels under U.S. S.G. § 3E1.1 as an acceptance of responsibility." As with "the degree of involvement" in a conspiracy, our review of the district court's determination of a defendant's "acceptance of responsibility" is under a clearly erroneous standard. *United States v. Wilson*, 878 F.2d 921, 923 (6th Cir.1989). Guideline section 3E1.1(a) allows for a two-level reduction "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." In other words, the burden falls on defendant's shoulders to show he has accepted responsibility for the crime committed. *United States v. Christoph*, 904 F.2d 1036, 1040 (6th Cir.1990).

Timothy's letter to the probation officer stated "I myself don't believe that I'm guilty of this crime." He further stated that he used cocaine but "was not involved in a plan to buy and sell it." The sentencing judge found that there was no evidence of acceptance of responsibility in Timothy's dealings with the probation officer. This finding is not clearly erroneous, as defendant has not satisfied his burden under *Christoph.*

### III.

For the foregoing reasons, we AFFIRM the convictions and sentences of Robert and Timothy. We also AFFIRM Ronald's conviction, but we VACATE his sentence and REMAND for resentencing consistent with this opinion.