16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Curtis ELLIS, Defendant-Appellant.
 No. 93-5451.
 United States Court of Appeals, Sixth Circuit.
 Jan. 31, 1994.
 
 Before: BOGGS and SILER, Circuit Judges; and CHURCHILL, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Curtis Ellis appeals the district court's determination of the quantity of drugs attributable to the conspiracy of which he was a member. Ellis also appeals the district court's refusal to grant a 4-level or 2-level reduction in his offense level, alleging that he was a "minimal" or "minor" participant. Because we find that the district court clearly erred in including an amount of cocaine (1020.6 grams) in the total attributable to Ellis, we vacate the sentence and remand for re-sentencing. However, we affirm the district court's sentence in all other respects.
 
 
 2
 * Ellis, Glenda West, and Timothy Parker were indicted for conspiracy to distribute cocaine, 21 U.S.C. Sec. 846, and distribution of cocaine, 21 U.S.C. Sec. 841(a)(1). Ellis pleaded guilty to the conspiracy charge and the government dismissed the distribution count.
 
 
 3
 On March 15, 1992, the Drug Enforcement Administration ("DEA") arrested a person who had 59.7 grams of cocaine in his possession. This person ("CI"[1]) told the DEA that Ellis delivered the 59.7 grams for West, CI's drug source. CI claimed that he had been purchasing cocaine from West for 18 months, at a rate of 2 to 4 ounces a month. He stated that he originally purchased drugs directly from West, but eventually Ellis began making the deliveries for West. CI agreed to cooperate further with the DEA in their investigation of West's drug operation.
 
 
 4
 On April 7, CI paid West for the 59.7 grams. During a conversation that the DEA monitored, West claimed that 2 kilograms of cocaine had arrived that day; that she had sold 538.65 grams of cocaine the previous day and 538.65 grams earlier in the day; and that she planned to sell 340.20 grams in the near future. West also indicated that Ellis made deliveries for her. CI then placed an order for an additional 113.4 grams. West promised that Ellis would deliver the cocaine the next day.
 
 
 5
 On April 8, Ellis delivered the cocaine to CI. On April 10, CI paid for the latest delivery and ordered an additional 167.6 grams of cocaine from West. During the course of the conversation with West, CI claimed that Ellis scared him because "both times" CI met Ellis, Ellis appeared "fired up or something."
 
 
 6
 West attempted to allay CI's fears by indicating that Ellis had been a reliable delivery person in the past. West also indicated that Ellis was scheduled to make a delivery on that day. CI insisted, however, that another person deliver the 167.6 grams. Parker delivered the drugs on April 23 and the DEA arrested Parker and West at that time. Ellis turned himself in the next day.
 
 
 7
 Based on this information, the pre-sentencing report ("PSR") credited the conspiracy with selling at least 4,778.80 grams of cocaine. The following table indicates the separate transactions that were the basis for the PSR's total:
 
 
 8
 Date Grams Transaction
1/89-4/92 1020.60 CI's estimated purchases from West
3/15/92 59.70 Ellis's delivery to CI
4/6/92 538.65 West's claim that she had sold this amount
4/7/92 2000.00 West's claim that she had received this amount
4/7/92 538.65 West's claim that she had sold this amount
4/7/92 340.20 West's claim that she planned to sell this amount
4/7/92 113.40 Ellis's delivery to CI
4/23/92 167.60 Parker's delivery to CI
 
 
 9
 The PSR assigned Ellis a base offense level of 30 and subtracted 3 levels for Ellis's acceptance of responsibility. The PSR also assigned Ellis a criminal history category of I.
 
 
 10
 During the sentencing hearing, the United States Attorney stated that she could prove by a preponderance of the evidence only that the conspiracy was liable for 2.24 kilograms of cocaine. The government did not attempt to prove that West had received the 2000 grams on April 7, or that she had sold 538.65 grams on April 7. The government's witness, DEA Agent Woodham, relayed the substance of his conversations with CI as proof of the amount of cocaine West and Ellis sold, and he also read from the transcripts of the monitored conversations between CI and West.
 
 
 11
 The district court found that the minimum amount of cocaine that Ellis handled was 2.24 kilograms. Based on this amount, the court assigned a base offense level of 28 and allowed a 3-level reduction for Ellis's acceptance of responsibility. The court, however, rejected Ellis's argument that he had an insignificant role in the offense. Ellis's sentence range was 57-71 months, with a statutory minimum of 60 months. The court imposed a sentence of 71 months. Ellis then filed this timely appeal.
 
 II
 
 12
 Ellis contends that the district court erred when it concluded that Ellis reasonably could have foreseen that West was selling at least 2.24 kilograms of cocaine and that he was accountable for that amount. The Sentencing Guidelines require a district court to consider relevant conduct when sentencing. U.S.S.G. Sec. 1B1.3. In the case of a "jointly undertaken criminal activity," relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity...." U.S.S.G. Sec. 1B1.3(a)(1)(B). Application Note 2 states in part:
 
 
 13
 Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant ... is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement.)
 
 
 14
 U.S.S.G. Sec. 1B1.3, comment. (n. 2) (1992).
 
 
 15
 The district court's factual findings regarding the amount of drugs for which a defendant is accountable will be upheld unless clearly erroneous. United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 498 U.S. 906, 989, 990, 111 S.Ct. 273, 530, 532 (1990). The amount of drugs involved in a crime need only be proved by a preponderance of the evidence for the purpose of sentencing. United States v. Moreno, 899 F.2d 465, 473 (6th Cir.1990).
 
 
 16
 In this case, the court addressed the scope of the criminal activity that Ellis agreed to undertake jointly with West as follows:
 
 
 17
 The court find[s] that the Defendant Ellis was involved in this conspiracy long before March 15, 1992. That he worked with Mrs. West, or indications are that he worked with her for several years. And that the very minimum of cocaine with which he come in contact and was reasonably foreseeable as far as he is concerned is the amount of 2240.5 grams.... And therefore, I find that by a preponderance of the evidence, much more than a preponderance of the evidence, that the defendant is chargeable with 2240.5 grams.
 
 
 18
 The district court adopted the government's position and found that Ellis was accountable for 2.24 kilograms. Ellis challenges the propriety of including the amounts of cocaine where he was not actually present at the transaction.
 
 
 19
 * Ellis contests the district court's finding that he was accountable for the 878.85 grams of cocaine that West bragged about selling. The Sentencing Guidelines provide as follows:
 
 
 20
 Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. See Sec. 1B1.3(a)(2) (Relevant Conduct). Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance.
 
 
 21
 U.S.S.G. Sec. 2D1.1, comment. (n. 12) (1992). If a defendant intended or was reasonably capable of producing the cocaine, this amount may also be included when determining the defendant's offense level. United States v. Gessa, 971 F.2d 1257, 1265 (6th Cir.1992) (en banc); cf. U.S.S.G. Sec. 2D1.1, comment. (n. 12) (1992). If the government proves by a preponderance of the evidence that the co-conspirators agreed to undertake jointly the distribution of the cocaine then all the co-conspirators are accountable for the drugs. United States v. Hodges, 935 F.2d 766, 774 (6th Cir.), cert. denied, 112 S.Ct. 251, 317 (1991); U.S.S.G. Sec. 1B1.3, comment. (n. 2) (1992).
 
 
 22
 In Ellis's case, the fact that West sold large amounts of cocaine to CI on a regular basis indicates that she was reasonably capable of selling over 878.5 grams in a short period of time. Ellis is accountable for this cocaine because the transcript of the conversation between CI and West indicates that Ellis was her primary delivery person at the time in question and that he played an active role in dividing up the cocaine and selling it. Consequently, the evidence was sufficient to support the district court's conclusion that West intended to sell and was capable of selling 878.85 grams of cocaine in a short time, and that Ellis agreed with West to undertake the distribution of the 878.85 grams of cocaine.
 
 B
 
 23
 Ellis contests the inclusion of 1,020.6 grams in the amount of drugs for which he was held accountable. Ellis claims that the government did not prove by a preponderance of the evidence that he was involved in the conspiracy prior to March 15, 1992 when he delivered cocaine to CI, and that this amount is based on West's activity before that date. We agree.
 
 
 24
 In United States v. Okayfor, 996 F.2d 116 (6th Cir.), cert. denied, 114 S.Ct. 238 (1993), we remanded for factual findings regarding the amount of drugs to be included in calculating the base offense level for one of the defendants, Okosi. In that case, the government produced evidence that the drug ring attempted to smuggle 3.5 kilograms of heroin into the United States. Two and a half kilograms was imported in March 1991 and Okosi arranged for the last kilogram to be imported in May 1991. Id. at 118-19.
 
 
 25
 The district court included the full 3.5 kilograms in determining the base offense level for Okosi. We remanded with the following instructions: "Given the fact that no evidence was offered of Okosi's involvement in the conspiracy prior to May 1991, the district court should explicitly set forth the evidence on which it relies if it finds Okosi accountable for the entire 3.5 kilograms." Id. at 121-22.
 
 
 26
 Ellis's case is similar to Okosi's. The court found that 1,020.6 grams of cocaine could be included under the "relevant conduct" guideline because CI testified that he had bought at least 2 ounces of cocaine each month from West in the eighteen months before he was arrested. The district court also indicated that there was sufficient evidence to indicate that Ellis had been involved in the distribution ring for several years.
 
 
 27
 The evidence in the record, however, does not support the district court's finding. There was some evidence that Ellis may have participated in prior deliveries, but there was no evidence that his involvement stretched back to January 1989. In fact, the DEA agent testified that he was not attempting to connect Ellis to the earliest transactions between CI and West. Furthermore, the DEA agent testified that CI was unable to estimate how many times Ellis had made deliveries to him. The agent stated that CI told him that Ellis had made "several" deliveries.
 
 
 28
 The district court also asked the DEA agent if it was the government's theory, based on the taped conversations, "that Ellis had been in this thing all along...." The agent answered that West had indicated as much during the conversations. The transcript of CI's conversation with West, however, indicates that CI only dealt with Ellis twice, namely the two times that Ellis personally delivered a total of 173.1 grams of cocaine to CI. This evidence is insufficient to support a finding that the 1,020.6 grams that CI purchased directly from West were part of Ellis's and West's "jointly undertaken criminal activity."
 
 
 29
 On appeal, the United States Attorney argues that the 1,020.6 grams are properly included in the amount because Ellis pleaded guilty to participating in a conspiracy spanning from January 1989 to April 1992. The Sentencing Guidelines, however, make it clear that where a count is worded broadly, the scope of the criminal activity jointly undertaken by the defendant is not necessarily co-extensive with the count. U.S.S.G. Sec. 1B1.3, comment. (n. 2). Considering the scarce evidence presented at the sentencing hearing, we find that the district court clearly erred in including the 1020.6 grams in the amount for which Ellis was accountable. Accordingly, we vacate that part of the sentence that depends upon the inclusion of the 1020.6 grams and remand for re-sentencing.
 
 C
 
 30
 Ellis contends that the district court also erred in including Parker's delivery of 167.6 grams to CI on April 22, 1992. The evidence, however, establishes that West was using Ellis as her delivery person at that point, and that Ellis was aware of the scope of the conspiracy. Consequently, it was reasonably foreseeable that someone other than Ellis would make deliveries. Since the evidence satisfies the requirement of U.S.S.G. Sec. 1B1.3(a)(1)(B), it was not clearly erroneous for the district court to include the 167.6 grams in the amount for which Ellis was accountable.
 
 III
 
 31
 Ellis argues that he is entitled to an offense-level reduction for being only a "minimal" or "minor" participant in the drug distribution ring. The Sentencing Guidelines provide a range of adjustments for defendants who play a role in an offense but who are "substantially less culpable than the average participant." U.S.S.G. Sec. 3B1.2, comment. (backg'd.). A district court's decision to apply Sec. 3B1.2 is "heavily dependent upon the facts of the particular case." Ibid. A district court's factual decisions under Sec. 3B1.2 are reviewed under the clearly erroneous standard. United States v. Phibbs, 999 F.2d 1053, 1075 (6th Cir.1993), petition for cert. filed, (U.S. Nov. 3, 1993) (Nos. 93-6682, 93-6725, 93-6777).
 
 
 32
 Also, the defendant has the burden of proving his minimal or minor role by a preponderance of the evidence. United States v. Kingston, 922 F.2d 1234, 1240 (6th Cir.1990), cert. denied, 111 S.Ct. 2054 (1991). The fact that a defendant is less culpable than another co-conspirator, however, is not sufficient to entitle him to a reduction. United States v. Nagi, 947 F.2d 211, 215 (6th Cir.1991), cert. denied, 112 S.Ct. 2309 (1992).
 
 
 33
 * Ellis first argues that he was a "minimal participant." U.S.S.G. Sec. 3B1.2(a) allows a district court to decrease a defendant's offense level by 4 levels if the defendant was a "minimal participant." The commentary describes a "minimal participant" as one who is "plainly among the least culpable of those involved in the conduct of a group," and one who lacks "knowledge or understanding of the scope and structure of the enterprise...." U.S.S.G. Sec. 3B1.2, comment. (n. 1). The Application Notes also indicate that
 
 
 34
 [i]t is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.
 
 
 35
 U.S.S.G. Sec. 3B1.2, comment. (n. 2).
 
 
 36
 In United States v. Hodges, supra, the court upheld the district court's determination that the defendant was not entitled to a 4-level reduction as a minimal participant. 935 F.2d at 774. In that case, the defendant was involved in more than one drug transaction and was present at several of the drug purchases. The district court found that the defendant had knowledge of the structure of the drug distribution scheme. The court also considered the fact that the defendant was sharing his apartment with a cocaine dealer. Id. at 774-75.
 
 
 37
 Ellis's role was at least as substantial as the defendant's in Hodges. During the sentencing hearing, the government presented evidence that CI normally placed his order with West and that Ellis made the delivery on two occasions. Also, the conversation between West and CI indicates that Ellis was the key delivery person for the distribution ring at that time. Finally, Ellis did not present any evidence that he was a minimal participant. In light of this evidence, the district court's finding that Ellis had "a slightly less role, but not a much less role [than West]" is not clearly erroneous.
 
 B
 
 38
 Ellis argues that if he does not qualify as a "minimal participant," he is still entitled to a reduction because he was "minor participant." U.S.S.G. Sec. 3B1.2(b) allows a 2-level reduction if the defendant was a "minor participant." The Application Notes define a "minor participant" as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. Sec. 3B1.2, comment. (n. 3).
 
 
 39
 In United States v. White, 985 F.2d 271 (6th Cir.1993), we upheld the district court's decision not to grant a 2-level reduction to a defendant who claimed that his role in a drug transaction was minor. In White, the defendant arranged the drug transaction, greeted the undercover officers at the hotel room door and inquired whether anyone was wearing a wire. Id. at 274. The defendant then relinquished control and another person actually negotiated the drug sale. Ibid. See also United States v. Kiestler, Nos. 92-5099, 92-5600, 92-5601, 1993 WL 172878 (6th Cir. May 21, 1993), cert. denied, 114 S.Ct. 276 (1993) (defendant not entitled to a 2-level reduction because she was a party to a drug transaction and on one occasion provided transportation to a major drug dealer to make a drug purchase).
 
 
 40
 Similarly, Ellis does not qualify for the 2-level reduction. As noted above, the government presented evidence that Ellis was involved in two drug deliveries. Also, Ellis failed to present any evidence to mitigate his role in the ring. Although Ellis may be somewhat less culpable than West, there is no evidence that he is "substantially less culpable." Consequently, the district court's decision not to grant the reduction under Sec. 3B1.2(b) was not clearly erroneous.
 
 
 41
 We REVERSE the district court's finding that Ellis was accountable for the 1020.6 grams of cocaine. We AFFIRM the district court's sentence in all other respects, and REMAND for re-sentencing.
 
 
 
 *
 The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 This person remained nameless throughout the sentencing hearing. The government referred to him as "the cooperating individual" or "the confidential informant."