NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0178n.06

No. 24-5687

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 31, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| DAMARQUECIO TATE, | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: CLAY, BUSH, and BLOOMEKATZ, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** A jury convicted Damarquecio Tate of one count of conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Tate now challenges the sufficiency of the evidence supporting his conviction. He argues that the evidence does not support the jury's finding that Tate—like his co-defendants—knew of, and intended to join, a conspiracy to distribute drugs. Because the evidence was sufficient, we **AFFIRM**.

**I.**

In early 2023, the Drug Enforcement Agency (DEA) began investigating Demarcus Williams after receiving information that he was distributing significant amounts of crystal methamphetamine throughout the Memphis area. Law enforcement used a variety of investigative tools to gather evidence of the drug trafficking organization and its ringleader. Confidential informants performed controlled buys, while pole cameras captured surveillance footage of individuals coming and going from different locations. Agents also secured ping orders to monitor

communication channels, which further illuminated the scope of the illegal activity. In total, the confidential informants performed four controlled buys—two directly from Demarcus Williams, and the other two from a cousin of Williams.

One by one, the investigation uncovered nearly fourteen individuals involved in the operation, one of whom was Damarquecio Tate. In April 2023, law enforcement received court authorization to intercept Williams's telephone communications. Through this wiretap, agents identified an unknown number with a "602" area code that was communicating regularly with Williams. A subpoena to the cell phone company revealed that this Phoenix, Arizona, number belonged to Tate. Law enforcement recorded several conversations between Williams and Tate, during which they discussed "waters" (a code name for methamphetamine) and a variety of other narcotics, the delivery of narcotics to Williams, the quantity and quality of the narcotics received, and payment arrangements. In August 2023, Tate was arrested at the address of one Olajuwon Myers, another Arizona source that was identified as a supplier of drugs to Williams.

Tate proceeded to trial. The government called three witnesses, two of whom are relevant here. First, Special Agent Casey Carl, a DEA agent who investigated Williams and his alleged dealings, testified to the investigative tools used to identify members of the drug trafficking organization, the types of narcotics being distributed, and the ways in which the DEA sought to dismantle the organization. Agent Carl also explained how a subpoena connected the unidentified Phoenix number, communicating frequently with Williams, to Tate. And he explained how law enforcement probed Tate's social media, which further corroborated Tate's identity.

Next, Officer Brittni Vick, a DEA Task Force Officer, testified to the content of several calls between Tate and Williams and how she was able to identify the voices on those calls. The government played these recorded calls for the jury, and Officer Vick explained how each call

implicated Tate in the conspiracy. At one point, Williams asked Tate to have his brother, Rodney Tate, come by to collect drug proceeds from him. Williams also requested that Tate bring five "waters." And another call revealed Williams complaining to Tate that his clients were not happy with the quality of the drugs received because they were hard to smoke.

Both witnesses also testified about Olajuwon Myers's role in the conspiracy and how his relationship with Williams (as well as Tate) provided additional evidence of Tate's knowledge. Agent Carl explained that Myers and Tate had an established relationship and spoke regularly, with over 1,000 phone calls and text messages exchanged between January and October 2023. He also noted that Myers similarly communicated with Rodney Tate over 750 times during that same time frame. And Officer Vick highlighted how Myers was caught on a wiretap telling Williams that he would bring him narcotics, further proving how Myers, Rodney Tate, Damarquecio Tate, and Williams were all participants in a joint endeavor.

The jury returned a verdict of guilty for Tate on the conspiracy charge. The district court sentenced Tate to 162 months' imprisonment. This appeal followed.

## II.

On appeal, Tate challenges only the sufficiency of the evidence, an issue we review de novo. *United States v. Collins*, 799 F.3d 554, 589 (6th Cir. 2015). The relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). That means a defendant contesting sufficiency "bears a very heavy burden." *United States v. Chaney*, 921 F.3d 572, 589 (6th Cir. 2019) (citation omitted). The jury's job is "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319. And we

"neither independently weigh[] the evidence, nor judge[] the credibility of witnesses who testified at trial." *United States v. Howard*, 621 F.3d 433, 460 (6th Cir. 2010) (quoting *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999)).  We will "reverse a judgment for insufficiency of evidence only if this judgment is not supported by substantial and competent evidence upon the record as a whole, and this rule applies whether the evidence is direct or wholly circumstantial." *United States v. Williams,* 998 F.3d 716, 728 (6th Cir. 2021) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)).

To sustain a conviction for conspiracy to distribute methamphetamine under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt: "(1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007).  Tate does not dispute that an extensive conspiracy between some individuals existed.  He disputes that the conspiracy extended to him.  Specifically, he argues that the government's proof regarding his knowledge of, and participation in, the conspiracy was insufficient to sustain his conviction.  We disagree.  The evidence is more than enough for a reasonable juror to find that Tate knowingly participated in a conspiracy to distribute methamphetamine.

Based on the proof adduced at trial, a reasonable juror could find that Tate was aware of Williams's drug trafficking operation and "voluntarily associated himself with it to further its objectives." *United States v. Hodges*, 935 F.2d 766, 772 (6th Cir. 1991).  The government need not prove an actual agreement—a tacit or implied agreement may suffice. *See Williams*, 998 F.3d at 728.  And the government may fulfill its burden of proof by circumstantial evidence. *United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999).  "Generally, a buyer-seller relationship alone is insufficient to tie a buyer to a conspiracy because mere sales do not prove the existence of the

agreement that must exist for there to be a conspiracy." *United States v. Deitz*, 577 F.3d 672, 680 (6th Cir. 2009) (cleaned up). Tate argues that the phone calls between himself and Williams were ambiguous, at best, and do not establish that they were discussing crystal methamphetamine. Also, he contends, even if the calls did allude to narcotics, they do not establish that Tate was "part of a larger drug conspiracy." *See United States v. Sadler*, 24 F.4th 515, 539 (6th Cir. 2022) (citation omitted).

But the government has shown more than just a buyer-seller relationship between Tate and Williams. The proof goes further to evince Tate's knowledge of, and participation in, the conspiracy. At trial, the government played several phone calls between Tate and Williams for the jury. In one call, Williams asks Tate to bring him a "load of waters," which Officer Vick confirmed to be a known code name for crystal methamphetamine. About an hour later, Williams tells Tate in another phone call that the narcotics he received are short. The two men also converse about how Williams was supposed to receive 448 grams (which is roughly a pound), but the delivery is short by about 100 grams. And it is revealed that Williams's brother (Earnest) is present during this call weighing the drugs. Tate also states that he vacuum-sealed the drugs. Officer Vick explained how Tate then tells Williams to go meet Tate's brother (Rodney) who resides in Memphis and can make it right. She testified that Rodney was believed to be a courier between Tate and Williams.

Subsequent conversations played for the jury also corroborate that Tate knew of the conspiracy and consciously participated in its objective. The government played an incriminating call from May 2023, wherein Williams tells Tate that certain people he serves have been complaining about the quality of the meth because they had been having a hard time smoking it. Tate responds that it's mostly crystal. And Officer Vick confirmed that agents purchased shards

of crystal methamphetamine in the same form as described in the phone call during the controlled buys. Based on this evidence, a reasonable juror could therefore conclude that Tate knowingly participated in the conspiracy.

Still, Tate maintains those calls alone are insufficient to sustain his conviction because they do not connect him to the conspiracy the same way that the pole cam evidence, the controlled buys, and the surveillance footage connect the other Memphis defendants to Williams's drug trafficking organization. Tate asserts that the evidence is devoid of communication between himself and anyone associated with the conspiracy, except for Williams. But as Tate concedes, "once a conspiracy is shown beyond a reasonable doubt, a defendant's connection to the conspiracy need only be slight, and the government is only required to prove that the defendant was a party to the general conspiratorial agreement." *Deitz*, 577 F.3d at 677 (cleaned up). The government supplied ample evidence to connect Tate to the established conspiracy, demonstrating circumstantially that Tate was aware of his involvement in the conspiracy to distribute and possess with intent to distribute crystal methamphetamine. As previously stated, Agent Carl and Officer Vick further testified about Tate's connection to Myers, who was determined to be another one of Williams's sources from Phoenix. Tate was arrested at Myers's house, and the two shared over 1,000 calls or text messages in just over a month. The government was also able to sufficiently connect Tate's brother, Rodney, to Williams and Williams's brother, Earnest. And Earnest was found to be the operator of the target stash house in Memphis. More still, the evidence shows that Rodney and Earnest regularly delivered methamphetamine. A reasonable juror could infer, at the very least, that these men knowingly worked together to further the conspiracy's objective: to possess and distribute crystal methamphetamine in the Memphis area. The evidence is sufficient to sustain Damarquecio Tate's conviction.

**III.**

For these reasons, we **AFFIRM** Tate's conviction. We also **DENY** Tate's motion to substitute counsel without prejudice. This denial does not preclude a renewed motion should there be further proceedings in this case.