UNITED STATES of America,
Plaintiff—Appellee,

v.

Porter J. MITCHELL, (99–3835)
Vincent Mitchell, (99–4256)
Defendants—Appellants

Nos. 99–3835, 99–4256.

United States Court of Appeals,
Sixth Circuit.

May 17, 2001.

Before BOGGS, SUHRHEINRICH, and GIBSON,* Circuit Judges.

GIBSON, Circuit Judge.

Two appeals are before us, both stemming from the same undercover drug investigation. Vincent Mitchell appeals in Case No. 99–4256 his conviction and sentence following a jury verdict against him on one count of conspiring to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(iii) (1994) and one count of distributing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) (1994). Porter Mitchell, who is Vincent Mitchell's nephew, appeals in Case No. 99–3835 the district court's refusal to grant a downward departure in calculating his sentence following his guilty plea to one count of distributing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii). For the following reasons, we AFFIRM Vincent Mitchell's conviction and sentence and DISMISS Porter Mitchell's appeal.

I.

Between March 25, 1998 and October 9, 1998, Porter Mitchell made ten cocaine sales to undercover ATF Agent Dan Ozbolt. At the first sale on March 25, Porter sold Ozbolt 12.1 grams of cocaine base. On April 10, Porter sold Ozbolt 23.7 grams. Ozbolt and Porter arranged to conduct the third cocaine base deal on May 27. That day, the two met near a McDonald's restaurant, then traveled in Ozbolt's car a short distance to a Sun TV store. A blue Chrysler was parked in the Sun TV lot, and Vincent Mitchell, someone known as Dre, and another individual were standing outside of it. Dre walked up to Porter and handed him a white plastic bag later said to contain a computer part. Porter took the bag, gestured or spoke to the others, and then suggested that he and Ozbolt go into the store. Porter took the bag to the store's clerk and said he needed to exchange the part. Porter told Ozbolt something to the effect that his uncle "left it on the mantle" and indicated that Vincent was "going to go get it." Ozbolt and Porter went back outside and stood outside the door. At some point, Ozbolt asked if the others could be trusted, and Porter responded that one guy was his uncle. The blue Chrysler pulled into the parking lot. Vincent got out, walked straight to Porter and Ozbolt, and handed Porter a bag containing 10.7 grams of cocaine base. As Vincent walked up, Porter said, "It was on the mantle, wasn't it." Porter then handed Ozbolt the drugs, and Vincent stood there for a while, looked around, and walked away.

Ozbolt bought 23 and 11.7 grams of cocaine base from Porter on June 4 and June 18, respectively. Ozbolt did not see Vincent on either occasion. On June 19, however, a day when Ozbolt met with Porter three times and conducted two transactions, Ozbolt saw Vincent again. During the first rendezvous with Porter, Ozbolt bought 62.6 grams of cocaine base. Porter mentioned that he had some cocaine powder and an AK–47 assault rifle for sale, and the two discussed meeting again later. When they did, Ozbolt saw Vincent in the

---

* The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

passenger's seat of Porter's car, where Vincent remained as Porter and Ozbolt stood outside and walked around the vehicle as they discussed the drug and gun sales. Porter told Ozbolt that he could not get the gun at the time, but that he could obtain the cocaine powder in about an hour. Porter returned later with 12.6 grams of cocaine powder, this time accompanied by someone other than Vincent.

Porter sold Ozbolt 101.2 grams of cocaine base on July 15 and 210 .4 grams on October 6. On October 9, Porter sold Ozbolt 131.5 grams of cocaine base. Other agents arrested Porter shortly thereafter.

Vincent went to Porter's initial court appearance. Ozbolt recognized Vincent from seeing him with Porter on May 27 and June 19. Ozbolt ascertained where Vincent lived, obtained an arrest warrant for him, and placed him under arrest. After receiving *Miranda*[1] warnings, Vincent admitted being at the Sun TV, but denied any possession of cocaine base. He recalled being approached on the street by Porter about accompanying him to a Sun TV "to do a white guy that he just met." Vincent also indicated that he had ridden with Porter when Porter "served people,"

which is a street phrase for selling cocaine base to others.

The indictment in count one alleged that Vincent conspired with Porter from March 1, 1998 through October 9, 1998 to distribute over fifty grams of cocaine base. Count four alleged that Vincent and Porter distributed over five grams of cocaine base on May 27, 1998. The remaining nine counts charged Porter with violating federal drug distribution laws on nine other occasions.

Vincent pleaded not guilty and went to trial. A jury found him guilty on counts one and four. At sentencing, the district court gave him a two-level reduction because he played a minor role in the offense and sentenced him to two terms of sixty months imprisonment to run concurrently. Porter pleaded guilty to one count of distributing over fifty grams of cocaine base and was sentenced to 210 months imprisonment.

## II.

### A.

Vincent's appeal involves five issues: (1) the district court's denial of his motion for judgment of acquittal[2]; (2) the

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Vincent also contends that the jury's verdict was against the manifest weight of the evidence. When he develops the argument in detail, however, it is evident that he is arguing that there was insufficient evidence to support his convictions, an argument we address in considering the denial of his motion for judgment of acquittal. An argument that the verdict was against the manifest weight of the evidence may be raised in the district court pursuant to a Fed.R.Crim.P. 33 motion for new trial. It is distinct from an argument challenging the sufficiency of the evidence to support a conviction, which may be raised under Fed.R.Crim.P. 29. *See generally United States v. Turner,* 490 F.Supp. 583, 593

(E.D.Mich.1979), *aff'd,* 633 F.2d 219 (6th Cir. 1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981) (describing Fed. R.Crim.P. 33 motions for new trial based on the weight of the evidence as disfavored, discretionary, and granted only "in the extraordinary circumstance where the evidence preponderates heavily against the verdict"). A challenge to the weight of the evidence must be directed to the district court. Vincent's failure to do so bars our consideration of his argument, which, in any event, would have been limited to determining whether the district court's ruling was a clear and manifest abuse of discretion. *See United States v. Hernandez,* 227 F.3d 686, 695 (6th Cir.2000), *pet'n for cert. filed,* (U.S. Feb. 5, 2001) (No. 00–8435).

district court's admission of evidence of Porter's alleged coconspirator statements at trial; (3) the district court's admission of evidence of his presence at the June 19, 1998 discussion between Porter and Ozbolt; (4) the district court's refusal to grant him a four-level mitigating role adjustment to his offense level; and (5) the district court's refusal to grant him a downward departure based on disparity between sentences for cocaine powder and cocaine base.

1.

■ We review de novo the denial of a Fed.R.Crim.P. 29 motion for judgment of acquittal. *United States v. Keeton*, 101 F.3d 48, 52 (6th Cir.1996). A motion for judgment of acquittal challenges the sufficiency of the evidence to support a conviction. *See United States v. King*, 169 F.3d 1035, 1038 (6th Cir.), *cert. denied*, 528 U.S. 892, 120 S.Ct. 218, 145 L.Ed.2d 183 (1999). The evidence is sufficient if the record, viewed in the light most favorable to the prosecution, contains substantial evidence that would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ As we have indicated, Vincent was convicted for conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(iii). In order to prove a conspiracy under 21 U.S.C. § 846, the government must prove, beyond a reasonable doubt, "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir.), *cert. denied*, 528 U.S. 1051, 120 S.Ct. 592, 145 L.Ed.2d 492 (1999). An agree-

ment may consist of a tacit, mutual understanding among the parties, and it may be proved by circumstantial evidence that is reasonably consistent with participation in a common plan. *United States v. Crossley*, 224 F.3d 847, 856 (6th Cir.2000). The government must show that the defendant knew the conspiracy's object and that he or she voluntarily associated with the conspiracy to further its objectives. *Gibbs*, 182 F.3d at 421. But the government need not prove that the defendant knew every detail of the conspiracy, *Crossley*, 224 F.3d at 856, or that the defendant was active in every phase of it, *United States v. Hodges*, 935 F.2d 766, 773 (6th Cir.1991). The defendant's participation in a conspiracy may be inferred from his or her actions and reactions to circumstances. *Id.* Further, the defendant's presence, though insufficient by itself to support a guilty verdict, is "a material and probative factor which the jury may consider in reaching its decision." *Id.* (quoting *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986)).

■ In this case, there was ample evidence that would support rational jury findings that Vincent conspired with Porter to sell cocaine base, that he knew that cocaine sales were the object of the conspiracy, that he willingly associated with Porter to facilitate the sales, and that he participated in those sales. There was testimony that Porter sold cocaine base to Ozbolt on nine occasions, and Vincent admitted riding with Porter when Porter "served" cocaine base to others. Ozbolt saw Vincent deliver a bag of cocaine base to Porter at the Sun TV, and the record supports inferences that the two were working together to make sure the drug deal was completed and that Vincent was the one who forgot to bring the drugs to the transaction initially. Ozbolt also placed Vincent at the scene of another

drug sale discussion between Porter and Ozbolt. Surveillance tape recordings and photos corroborate Ozbolt's testimony. This evidence is sufficient to allow a reasonable jury to find Vincent guilty of conspiring to distribute cocaine base.[3]

■ Vincent was also found guilty of distributing over five grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). Here, a rational jury could find Vincent guilty beyond a reasonable doubt based on Ozbolt's testimony about Vincent's handing Porter the bag of 10.7 grams of cocaine base. The conviction on count four is adequately supported by the evidence. The district court did not err in denying Vincent's motion for judgment of acquittal.

### 2.

■ Vincent argues that the district court erred in admitting alleged coconspirator statements of Porter. Fed.R.Evid. 801(d)(2)(E) provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay if it is offered against a party. Admission under Fed.R.Evid. 801(d)(2)(E) hinges on the government proving to the district court by a preponderance of the evidence "(1) that the conspiracy existed; (2) that the defendant was a member of the conspiracy; and (3) that the co-conspirator's statements were made in furtherance of the conspiracy." *United States v. Wilson,* 168 F.3d 916, 920 (6th Cir.1999). When making this three-part factual determination, the district court may consider the alleged conspirator state-ments as evidence that a conspiracy existed. *Id.* at 921. We must uphold the district court's determinations unless they are clearly erroneous. *United States v. Gessa,* 971 F.2d 1257, 1261 (6th Cir.1992) (en banc). For a determination to be clearly erroneous, it must leave us "with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, we may not disturb it on appeal. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ In the instant case, the district court conducted a hearing outside the presence of the jury and found that the government met its burden in proving that a conspiracy existed, that Vincent was a member of the conspiracy, and that Porter's statements were made during and in furtherance of the conspiracy. These determinations are not clearly erroneous. Ozbolt's testimony that he saw Vincent return to the Sun TV parking lot with a bag of drugs and give it to Porter, who immediately handed it to Ozbolt, is itself sufficient to sustain the district court's conclusion that it was more likely than not that a conspiracy to distribute drugs existed and that Porter and Vincent were members of it. Contrary to Vincent's assertion, *United States v. Hamilton,* 689 F.2d 1262 (6th Cir.1982), does not undermine the district court's determination. In

---

**3.** Vincent also argues that there was insufficient evidence that he conspired to distribute or possess the fifty-gram quantity of drugs specified in the indictment. He did not raise this issue in the district court when stating the specific grounds for his motion for judgment of acquittal and has therefore waived this objection. *See United States v. Dandy,*

998 F.2d 1344, 1356–57 (6th Cir.1993). We note that the district court did not sentence Vincent for conspiring to distribute fifty or more grams of cocaine base; rather, it held him accountable only for the 10.7 grams he delivered to Porter at the May 27, 1998 transaction, the amount Vincent concedes was involved in the alleged conspiracy.

*Hamilton,* we stated that evidence of a single sale is insufficient to establish a conspiracy only in two situations, neither of which are present here: (1) when a buyer and seller are the only two participants in an alleged conspiracy and (2) when a buyer is a minor figure in a complex conspiracy with no knowledge of the scope of the conspiracy. *Id.* at 1272.

■ The district court's determination that the alleged coconspirator statements were in furtherance of the conspiracy is supported by our decisions in *United States v. Clark,* 18 F.3d 1337, 1342 (6th Cir.1994), and *United States v. Hitow,* 889 F.2d 1573, 1581 (6th Cir .1989). In both cases, we held that "[s]tatements which identify the participants and their roles in the conspiracy are made 'in furtherance' of a conspiracy." Porter's statement about his uncle leaving "it on the mantle" tended to identify Vincent as being a participant in the conspiracy. Porter's statement that Vincent was "going to go get it" showed that Vincent helped Porter with the drug deals. The district court did not err in admitting evidence of the alleged coconspirator statements.

### 3.

■ Vincent contends that it was improper for the jury to consider evidence about his presence at the June 19 discussion between Ozbolt and Porter because there was no credible basis to link it to the May 27 transaction at the Sun TV. As he did not object to the introduction of this evidence, our review is limited to correcting plain errors. *Wilson,* 168 F.3d at 920. "Plain errors are limited to those harmful ones so rank that they should have been apparent to the trial judge without objection, or that strike at fundamental fairness, honesty, or public reputation of the trial." *United States v. Evans,* 883 F.2d 496, 499 (6th Cir.1989) (quoting *United States v.*

*Causey,* 834 F.2d 1277, 1281 (6th Cir. 1987)). The district court's admission of evidence concerning the June 19 transaction falls well short of this standard. The evidence was not inflammatory and was relevant to establish that Vincent knew the nature of Porter's dealings with Ozbolt and that he participated in the conspiracy. *See Hodges,* 935 F.2d at 773. Nor did the evidence have the potential to cause a miscarriage of justice; the district court correctly instructed the jury that the "mere association of the defendant with a coconspirator shall not in and of itself establish that a defendant was a member and participated in an alleged conspiracy" and that the "mere presence of the defendant at the scene of the alleged crime or arrest shall not in and of itself establish guilt as to the alleged crime." On this record, there is nothing approaching plain error.

### 4.

■ Vincent next contends that he should have received a four-level reduction for being a minimal participant in the offense rather than a two-level reduction for being a minor participant. We review a district court's denial of a mitigating role adjustment to a defendant's offense level for clear error. *United States v. Owusu,* 199 F.3d 329, 337 (6th Cir.2000). To qualify for a minimal participant reduction, a defendant must be "plainly among the least culpable of those involved in the conduct of a group" as indicated by his or her "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." United States Sentencing Commission, *Guidelines Manual,* § 3B1.2, comment. (n.1) (Nov.2000). A reduction for being a minor participant is available to "any participant who is less culpable than most other participants, but whose role could not be described as minimal." USSG § 3B1.2, comment. (n.3).

The defendant bears the burden of proving a mitigating role by a preponderance of the evidence. *Owusu,* 199 F.3d at 337.

Vincent argues that he is entitled to a minimal participant reduction because he was never associated with any activity relating to the organization or management of the conspiracy and because he never negotiated any price or directed any aspect of the conspiracy. Although the evidence indicates that Vincent was less culpable than Porter, it suggests that Vincent was well aware of Porter's illegal drug activities. Vincent knew that Porter sold cocaine base. He personally delivered drugs to Porter at the Sun TV parking lot, and he admitted accompanying Porter when Porter "served" cocaine base to others. He was also present while Porter discussed a drug sale with Ozbolt. Vincent's awareness of the nature and scope of Porter's drug dealings suggests he is outside the purview of what the Guidelines contemplate as a minimal participant. *See* USSG § 3B1.2, comment. (n.1). The district court's conclusion that Vincent qualified as a minor participant rather than a minimal participant rests on a plausible interpretation of the evidence, and therefore it is not clearly erroneous. *See Anderson,* 470 U.S. at 573–74, 105 S.Ct. 1504.

### 5.

 Finally, Vincent urges us to "correct a longstanding and continuing injustice imposed by the Sentencing Guidelines" and hold that the district court erred in failing to grant him a downward departure based on the disparity in sentences for crack (cocaine base) and cocaine powder. We reject this argument as contrary to controlling precedent. *See United States v. Gaines,* 122 F.3d 324, 329–30 (6th Cir.1997) (Congress made "deliberate and informed decision to keep the 100:1 ratio"

between cocaine base and cocaine powder sentences; district court lacks authority to use ratio as basis for downward departure); *see also United States v. Williams,* 962 F.2d 1218, 1227 (6th Cir.1992) (100:1 ratio does not offend equal protection); *United States v. Pickett,* 941 F.2d 411, 418 (6th Cir.1991) (no substantive due process violation in 100:1 ratio). We cannot overrule the decision of another panel. *United States v. Ables,* 167 F.3d 1021, 1027 (6th Cir.), *cert. denied,* 527 U.S. 1027, 119 S.Ct. 2378, 144 L.Ed.2d 781 (1999). The district court's refusal to depart downward was proper.

### B.

Porter raises one issue on appeal. He argues that the district court erred by denying his request for downward departure, which was based on his theory that the agents investigating him sought to manipulate his sentence through their lengthy investigation of him.

 A defendant may appeal his sentence under the Guidelines if it was "imposed in violation of law" or "imposed as a result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a) (1994). A sentencing court must impose a sentence as set forth within the Guidelines unless it finds that an aggravating or mitigating circumstance in a particular case that was not adequately taken into account by the Sentencing Commission warrants a different sentence. 18 U.S.C. § 3553(b) (1994). In making this determination, the court must ascertain whether the Sentencing Commission has proscribed consideration of a factor and, if not, must determine whether the factor, as it occurs in the particular circumstances, takes the case outside the "heartland" of cases embodied by the applicable Guideline. *United States v. Coleman,* 188 F.3d 354, 358 (6th Cir.1999) (en banc).

Ordinarily, a district court's refusal to exercise its discretion to grant a downward departure is not subject to review. *Owusu,* 199 F.3d at 349. We may review the district court's denial of a downward departure only if the district court "incorrectly believed [it] lacked any authority to consider the defendant's mitigating circumstances as well as the discretion to deviate from the guidelines." *Coleman,* 188 F.3d at 357. When reviewing a district court's ruling, we are mindful that a district court has no duty to state affirmatively that it knows it possesses the power to grant a downward departure, but declines to do so. *See Owusu,* 199 F.3d at 349. Thus, we should be reluctant to treat as ambiguous a district court's ruling that does not affirmatively state that the court knew it could depart downward, but chose not to do so based on the circumstances of the particular case. *Id.*

Porter filed a sentencing memorandum with the district court requesting a downward departure on grounds that the investigating agents improperly tried to manipulate his sentence and entrap him by continuing to order large quantities of drugs from him after they had ample evidence of his guilt, by requesting that he sell substances that were "cooked" or "done up" into cocaine base rather than cocaine hydrochloride, by paying him more than the drug's street price, and by giving him two handguns on the day he was arrested. He cited cases from other circuits recognizing sentencing entrapment or manipulation as a valid basis for downward departure, *e.g., United States v. Staufer,* 38 F.3d 1103, 1108 (9th Cir. 1994); *United States v. Barth,* 990 F.2d 422, 425 (8th Cir.1993), as well as contrary cases, *e.g., United States v. Garcia,* 79 F.3d 74, 76 (7th Cir.1996); *United States v. Miller,* 71 F.3d 813, 817–18 (11th Cir.1996); *United States v. Walls,* 70 F.3d 1323, 1330 (D.C.Cir.1995). He noted that this circuit has not decided whether sentencing entrapment is a valid basis for a downward departure. *See United States v. Watkins,* 179 F.3d 489, 503 n. 14 (6th Cir.1999).

After considering these arguments, the district court decided that Porter did not qualify for a downward departure, based on the following reasoning:

The second issue raised by the defendant has to do with an argument of sentencing manipulation or entrapment. . . . [T]he argument is that certain steps were taken by Agent Ozbolt with no purpose other than increasing his sentence to which Mr. Mitchell would be exposed.

The argument basically is that there were a number of transactions over an extended period of time, particularly the latter three transactions involving more drug purchases which could be the basis and are the basis in the presentence report to increase the sentencing base of Porter J. Mitchell.

The Court also takes note from the testimony, though, that Agent Ozbolt indicated that by increasing the amount of drugs to be purchased, the goal was to find the supplier of the defendant. Certainly a worthy goal of law enforcement is to move up the chain and attempt to find those involved in even bigger drug transactions than was Porter J. Mitchell.

In the Court's view, before the cases should even be analyzed as cited by the defendant, the Court has to first make a finding of some sort of either misconduct or deliberate intention on the part of the law enforcement agency in this case to increase the sentence as opposed to some legitimate purpose. The Court instead finds that there was articulated within the purpose here and certainly jibes with the testimony given and cer-

tainly makes sense that the government argues it was simply trying to find bigger defendants to prosecute in this case.

I make a finding that there is nothing in here that would indicate to the Court that these were amounts that the defendant otherwise would not have sold, or somehow was done for the sole purpose of increasing the sentence to the defendant . . . .

I am inclined not to downwardly depart or otherwise accept an argument of sentencing manipulation or entrancement [sic]. So with that, [the] objection[ ] will be overruled.

 The district court's analysis shows that it believed it was authorized to consider whether the agents tried to manipulate or enhance Porter's sentence or to entrap him when deciding whether downward departure was appropriate. Porter argues that the district court appeared to believe it was without discretion to depart unless the agents stated that their only motivation was to increase his sentence. We do not think this to be the case. As the quoted excerpt shows, the district court found that it was not the agents' sole purpose to increase Porter's sentence in response to Porter's arguments. But the district court also indicated that it was "inclined not to downwardly depart" apart from the sentencing manipulation or entrapment arguments. In sum, we think it sufficiently clear that the district court simply decided that none of the circumstances warranted imposition of a lower sentence. Accordingly, the district court's determination is not reviewable. *See Coleman*, 188 F.3d at 357.

## III.

For the reasons stated above, we AFFIRM the district court's decisions with respect to Vincent Mitchell and DISMISS Porter Mitchell's appeal.