RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0239p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JAMAL BOWENS (18-5636); LEE HOPE (18-5637),

*Defendants-Appellants*.

┐
│
│
│
> Nos. 18-5636/5637
│
│
│
┘

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:17-cr-20296—Sheryl H. Lipman, District Judge.

Argued: June 27, 2019

Decided and Filed: September 12, 2019

Before: ROGERS, GRIFFIN, and NALBANDIAN.

_____

## COUNSEL

**ARGUED:** Tyrone J. Paylor, FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant in 18-5636. Alexander C. Wharton, THE WHARTON LAW FIRM, Memphis, Tennessee, for Appellant in 18-5637. Marques T. Young, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee. **ON BRIEF:** Tyrone J. Paylor, FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant in 18-5636. Alexander C. Wharton, THE WHARTON LAW FIRM, Memphis, Tennessee, for Appellant in 18-5637. Marques T. Young, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

---

**OPINION**

---

ROGERS, Circuit Judge.  A jury convicted Jamal Bowens and Lee Hope of possessing firearms while being unlawful users of marijuana, a controlled substance, after they were arrested with guns and marijuana in May 2017.  *See* 18 U.S.C. § 922(g)(3).  There was sufficient evidence of the defendants' regular and repeated use of marijuana to sustain the conviction, notwithstanding defendants' arguments regarding the credibility of some of the evidence from their Facebook accounts.  There was also ample evidence showing that the defendants knew they used marijuana, such that it was not plain error that the jury was never asked if the defendants were "knowingly" unlawful users of a controlled substance, notwithstanding the Supreme Court's recent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019).  There was not, however, enough of a connection between Bowens' possession of a firearm in January 2017 to justify the district court's determination that the earlier possession was "relevant conduct" that could count against him at sentencing.  In all, the defendants' convictions stand but Bowens' case will be remanded for resentencing.

I.

On May 27, 2017, Memphis police officers found Bowens and Hope in the backseat of a vehicle with a marijuana blunt between them, as well as two firearms—one at Bowens' feet and the other on Hope's person.  The Government charged both men with violating 18 U.S.C. § 922(g)(3), which prohibits unlawful users of controlled substances from possessing firearms. Under our caselaw, the Government needed to prove that the defendants were regular and repeated users of marijuana to get a conviction.  *See United States v. Burchard*, 580 F.3d 341, 350 (6th Cir. 2009).

To do this, the Government presented the jury with evidence from Facebook.  A video uploaded to Bowens' Facebook account the day of the arrest showed the defendants in the parking lot of a McDonald's brandishing the firearms they were later arrested with and smoking what appeared to be a marijuana blunt.  There were various comments and posts on both

defendants' accounts in which they appeared to describe using marijuana; statements such as "Getting high and drunk da whole day," or "Too high last night. Just woke up." There were also some pictures on their Facebook accounts that appeared to show the men smoking marijuana, some with captions like "Smoking dope wit da demons" or "Smoking gas to my face." These photos and comments were uploaded or posted over the course of seven months leading up to the date of the defendants' arrests. The jury was convinced, and convicted both men. The district court sustained the convictions, denying motions for judgment of acquittal and for a new trial.

At Bowens' sentencing, the Government sought a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A) for an offense involving three to seven firearms. Only two firearms were recovered from the arrest, but the Government got to three by counting a firearm Bowens allegedly possessed in January 2017. This firearm had been recovered in Bowens' room at his mother's house as part of an unrelated investigation into a shooting that had occurred that month. Bowens was never charged with unlawful possession of this firearm. Over Bowens' objection, the district court found that this firearm possession constituted "relevant conduct" and applied the two-level enhancement to Bowens' sentence. Bowens asked that his sentence run concurrently with his anticipated state sentence for the January shooting, but the district court rejected this request. The court did, however, orally agree to credit Bowens' time served in federal custody since his indictment, but the judgment sheet did not include language to that effect.

II.

The defendants challenge their convictions on three grounds. They first assert that there was insufficient evidence to establish their regular and repeated use of marijuana. Next they argue that even if there was sufficient evidence to sustain their convictions under Federal Rule of Criminal Procedure 29, the district court erred in denying their motions for a new trial under Rule 33 because the court applied the wrong legal standard in reviewing their Rule 33 motions. Finally, based on a recent Supreme Court decision, defendants contend that the district court plainly erred by failing to give an instruction about the defendants' knowledge. These challenges lack merit.

The evidence was sufficient to support the jury's verdict that the defendants were unlawful users of a controlled substance while in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3).  Under that statute, "the government must prove . . . that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm."  *United States v. Burchard*, 580 F.3d 341, 350 (6th Cir. 2009).  The Government used evidence obtained from the defendants' Facebook accounts to prove that the defendants used marijuana regularly and over an extended period of time encompassing their firearm possession.  These accounts showed several pictures (and one video) of the defendants smoking marijuana, as well as comments about smoking marijuana, all posted over the course of seven months leading up to the defendants' arrest.

The defendants challenge the sufficiency of this evidence only on the grounds that the Facebook evidence does not depict marijuana use and that the Government failed to "corroborate" this evidence.  They do not argue that even if the Facebook posts depict marijuana use, that use is too infrequent to constitute "regularity" or use "over an extended period of time." The defendants' arguments fail because they are at bottom jury arguments—that the evidence is circumstantial and open to multiple interpretations.

It is true that much of this evidence is circumstantial, and the illegality of the defendants' conduct must be inferred.  There is no physical proof that the defendants were smoking marijuana or discussing marijuana use in these Facebook posts; in theory they could have been smoking cigars and talking about "getting high" on alcohol.  But circumstantial evidence alone can support conviction, *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010), and on sufficiency review we draw all reasonable inferences in favor of the jury's verdict, *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016).

There is ample circumstantial evidence to support the jury's apparent inference that the defendants were smoking marijuana.  The men were arrested with a marijuana blunt.  There are pictures of defendants smoking what appears to be marijuana, with captions that refer to marijuana use.  For example, a picture on Bowens' page has the caption "Smoking dope wit da demons," and a picture on Hope's page has the caption "Smoking gas to my face."  Several other posts on the defendants' pages refer to marijuana use, such as "Getting high and drunk da whole

day," "I'm so MF high crazy," and "I just been too high lately." Hope referred specifically to "weed" when asking "Where da weedman at?" The jury did not need an eyewitness testifying that Bowens and Hope smoked marijuana, nor an expert to explain why the smoke in these pictures had to be marijuana smoke, or why statements about "kush" and "gas" had to refer to marijuana. This was enough circumstantial evidence for the jury to infer that the defendants were smoking marijuana in the Facebook pictures, and referring to marijuana use in these Facebook posts.

There was also enough to infer that defendants were using marijuana during the relevant timeframe. Again, there is no direct physical evidence that the pictures were taken in the seven-month timeframe leading up to the defendants' arrest. Facebook strips metadata from pictures, so aside from when a Facebook picture was uploaded, it is hard to say when it was taken. But when a picture was uploaded is at least a reference point. A juror could infer that a picture posted in, say, late October 2016, was in fact taken in late October 2016. In addition, there is circumstantial evidence that supports the jury's verdict that these pictures were taken on or about the dates they were uploaded to Facebook. The jury could compare the defendants in the courtroom with the men in the pictures to determine if they differed in age, or in entirety for that matter, from the men in the pictures. The captions to the pictures suggest recency—for example, the defendants used the present participle, e.g., "*Smoking* dope wit da demons," "*Smoking* gas to my face," and not "*smoked*." Also, these pictures were posted around the times that the defendants were posting other comments about smoking marijuana.

Those comments of course could have been posted by other people. Anyone could have used the defendants' Facebook accounts, just as the pictures could have depicted the men smoking tobacco cigars, and "getting high" could have been a reference to skydiving. But just as there was circumstantial evidence from which the jury could infer that the pictures depicted marijuana use and "getting high" referred to marijuana, there was circumstantial evidence from which the jury could infer that the defendants were the ones posting this content. The account linked to Bowens was under the name he first gave the arresting officers. Hope's account was under his own name. Both accounts contained images of the two men. This was enough for the

jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana.

In arguing the contrary, the defendants make misplaced admission-related arguments. Bowens notes that no one testified for certain that either defendant authored these comments or posts and he discusses the "challenges presented by Facebook evidence," but he cites only cases regarding authentication, and therefore admission, of evidence. *See* Bowens' Appellant's Br. at 34–35 (citing, inter alia, *Commonwealth v. Mangel*, 181 A.3d 1154, 1162 (Pa. Super. Ct 2018); *United States v. Vayner*, 769 F.3d 125, 131 (2d Cir. 2014); *United States v. Jackson*, 208 F.3d 633, 638 (7th Cir. 2000)). On appeal, neither defendant challenges the admission of this evidence, only its sufficiency. This is the fundamental problem with the defendants' evidentiary arguments: they are at bottom jury arguments—contentions that the Government's case is weak and that the Facebook evidence is not to be believed. But the evidence was properly admitted and the jury chose to believe the Government's interpretation of it.

There is no general rule against the Government's relying on this Facebook evidence. Defendants argue that the Facebook evidence violated the "corroboration rule," a "dusty doctrine of criminal law" that generally speaking prohibits convictions based solely on uncorroborated confessions. *See United States v. Brown*, 617 F.3d 857, 860 (6th Cir. 2010). But as the district court explained, there is a "fatal defect" in the defendants' argument: they did not make a "confession." "[C]ourts have distinguished between a defendant who admits facts sufficient to establish an element of a crime after the crime has been committed [i.e., a confession,] and a defendant who admits similar facts before, or during the commission of, a crime." *United States v. Pennell*, 737 F.2d 521, 537 (6th Cir. 1984). Only the former requires corroboration. *Id.* The modern version of the rule is designed to protect against false confessions, especially those obtained by prosecutorial pressure. *See id.* (discussing *Opper v. United States*, 348 U.S. 84, 90 (1954)). The rule is not meant to hide from sight a defendant's inadvertent admissions of criminal activity. As the Facebook evidence here consists of statements (and photographs and a video) produced before or during the commission of the charged offense, the corroboration rule presents no hurdle to the jury's use of this evidence in finding guilt.

Finally, the district court applied the proper distinct legal standards in denying the defendants' motions for a judgment of acquittal under Federal Rule of Criminal Procedure 29 and for a new trial under Rule 33. First, with respect to a motion under Rule 29, a court considers "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a written order, the district court set forth this standard and determined that a rational trier of fact could have convicted the defendants of violating 18 U.S.C. § 922(g)(3) beyond a reasonable doubt. As explained above, this was correct.

In its order, the district court also denied the defendants' Rule 33 motions for a new trial; the court stated and applied the correct legal standard here as well. The court explained that it "may vacate any judgment and grant a new trial if the interest of justice so requires," quoting Fed. R. Crim P. 33. The court further elaborated that such motions are "disfavored, discretionary, and granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *Id.* (quoting *United States v. Mitchell*, 9 F. App'x 485, 489 n.2 (6th Cir. 2001)). This is the correct standard for reviewing a motion for a new trial—it is not a question of whether the evidence was sufficient but whether the evidence weighed "heavily" against the verdict. A trial court should only grant the motion when the verdict is against the "manifest weight" of the evidence. *Mallory*, 902 F.3d at 596 (quoting *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007)).

The district court correctly applied that standard. The court wrote that it denied the Rule 33 motions "for the same reasons" it denied the Rule 29 motions. This was enough under abuse-of-discretion review because the defendants made the same arguments in support of their Rule 33 motions as they did in support of their Rule 29 motions. These are the same arguments addressed above: that the Facebook evidence did not necessarily show what the Government says it showed. The district court's statement that it was denying the Rule 33 motions "for the same reasons" is reasonably understood as the court's denying the motions because it found that the defendants' evidentiary arguments were weak and therefore the manifest weight of the evidence does not cut against the jury's verdict. The defendants would have us read "for the

same reasons" as "because the evidence here was sufficient," but, although a plausible reading, that is not the most natural reading of the court's statement, given that it had immediately before set forth the appropriate standard of review for a motion under Rule 33 (a standard that does not concern sufficiency).

Bowens relies on *Mallory*, but that case is distinguishable. In *Mallory*, this court remanded because it was unclear what standard the trial court applied. 902 F.3d at 596–97. In that case, the trial court repeatedly intermingled the Rule 33 and Rule 29 standards in such a manner as to make it unclear whether the court understood the distinction or applied it. *See id.* That is not the case here. The court clearly separated its analysis of the two motions, set forth the correct standard for a Rule 33 motion, and gave a sufficient reason for denying the motions. There was enough evidence to convict the defendants, and the district court properly reviewed their motions for acquittal and a new trial.

III.

Further, the district court did not plainly err in failing to instruct the jury that the defendants must have known they were unlawful users of a controlled substance in order to be guilty of violating 18 U.S.C. § 922(g)(3). Defendants did not object to the jury instructions on this ground, and they concede that we should review for plain error. In light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the lack of an instruction on the defendants' knowledge of this element may have been an error. The defendant in *Rehaif* was prosecuted under 18 U.S.C. § 922(g)(5) for possessing a firearm while being an alien unlawfully present in the United States. 139 S. Ct. at 2194. The Court held that in prosecutions under 18 U.S.C. § 922(g), "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200. Defendants here would extend the holding in *Rehaif* to prosecutions under 18 U.S.C. § 922(g)(3), such that the Government would have to prove that they both knew they possessed firearms and knew that they were unlawful users of a controlled substance.

Even assuming that *Rehaif* would apply to prosecutions under § 922(g)(3), any error from not instructing the jury on this knowledge requirement was not plain because the defendants

cannot show that but for the error, the outcome of the proceeding would have been different. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016). The jury would surely have found that defendants knew they were unlawful users of controlled substances. The jury heard that the defendants were arrested with marijuana, posted pictures of themselves using marijuana, commented about using marijuana, and posted a video of them smoking marijuana. As discussed above, the defendants dispute this evidence, but not on the ground that they were unaware the substance was marijuana, or unaware they were "unlawfully" using it. They argued that the pictures showed the defendants smoking other substances and that the posts had other meanings, or were written by other people. Not in the court below, in their briefing on appeal, or in their letters to the court post-*Rehaif* have the defendants argued that even if they smoked marijuana they did not do so "knowingly."

Rather, defendants appear to argue that even if they knowingly used marijuana, *Rehaif* requires something more: that the Government prove each defendant "knew he was *prohibited from possession* [of a firearm] because he was an unlawful user of a controlled substance," that in other words he "knew of his status *as a prohibited person*." Under such a reading a jury instruction might have made a difference. Although it borders on fantastical to suggest that defendants were unaware they were smoking marijuana, or that marijuana was a controlled substance, it is at least plausible that they were unaware that they were prohibited from possessing firearms under a subsection of 18 U.S.C. § 922(g) due to their regular and repeated drug use. Such knowledge, however, is not, and cannot be, what *Rehaif* requires.

The defendants' reading of *Rehaif* goes too far because it runs headlong into the venerable maxim that ignorance of the law is no excuse. *See Cheek v. United States*, 498 U.S. 192, 199 (1991). *Rehaif* did not graft onto § 922(g) an ignorance-of-the-law defense by which every defendant could escape conviction if he was unaware of this provision of the United States Code. Defendants' interpretation does not follow from the text of *Rehaif*. At the end of its opinion, the Court wrote that "the Government must prove . . . that [a defendant] knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. That is, in a prosecution under § 922(g)(3), the Government arguably must prove that defendants knew they were unlawful users of a controlled substance, but not, as defendants

appear to argue, that they knew unlawful users of controlled substances were prohibited from possessing firearms under federal law.

To be sure, the knowledge the Government would have to prove encompasses questions of law—the defendant must know that his use is "unlawful" and that the substance was "controlled," all of which require some knowledge of federal drug law. Proving knowledge of such collateral legal matters however does not conflict with the general rule against using ignorance of the law as a defense. *See Rehaif*, 139 S. Ct. at 2198. As the Court explained in *Rehaif*, the maxim that ignorance of the law is no excuse "does not normally apply where a defendant 'has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct,' thereby negating an element of the offense." *Id.* (quoting 1 W. LaFave & A. Scott, Substantive Criminal Law § 5.1(a), p. 575 (1986)).

If defendants rely on ignorance of their unlawful drug use, they run up against plain error review; nothing suggests the outcome would be different if the jury had to find that defendants knew that marijuana was illegal. If defendants rely on ignorance of the law, they must confront the more basic tenet that ignorance of the law is no excuse. In either event, *Rehaif* does not compel reversal. The defendants have presented no compelling reason to disturb their convictions.

IV.

Bowens alone challenges his sentence and two of his three arguments have merit. He challenges the court's application of a number-of-firearms enhancement under U.S.S.G. § 2K2.1(b), arguing that a third firearm should not count against him because he did not possess it and even if he did it was not relevant conduct. Although the district court's determination that Bowens possessed this third firearm was not clearly erroneous, Bowens is correct that the third firearm should not have been counted because it was not conduct relevant to the offense of conviction.

In January 2017 (four months before Bowens was arrested on the instant charges), Officer Beckham of the Memphis police department obtained a search warrant for Bowens'

mother's house.  He was investigating a homicide that occurred earlier in January.  Bowens was a suspect in that homicide and Bowens had provided his mother's address as his residence. Beckham and others executed the warrant on January 25, 2017.  After entering the house, the officers asked Bowens' mother where Bowens slept, and she indicated a downstairs bedroom. Police officers found a Sig Sauer handgun underneath a pillow in that room.

Under U.S.S.G. § 2K2.1(b), a court will increase a defendant's offense level if he possessed three to seven firearms during the commission of an offense.  The Government argued that Bowens possessed three firearms—the two firearms found when the defendants were arrested in May 2017, and the Sig Sauer recovered in January 2017.  The court agreed.  The firearms enhancement should not have been applied however because Bowens' possession of the Sig Sauer was not relevant to the charged offense under the Guidelines' relevant-conduct provision.

Bowens' possession of the Sig Sauer should not have counted as relevant conduct because the circumstances surrounding that possession were unrelated to the offense of conviction.  To determine relevant conduct, the court looks to whether the activity was "part of the same course of conduct or common scheme or plan as the offense of conviction."  U.S.S.G. § 1B1.3(a)(2); *see United States v. Santoro*, 159 F.3d 318, 321 (7th Cir. 1998).  Leaving a Sig Sauer under a pillow at his mother's house in January 2017 was not part of the same scheme or plan as possession of the two charged firearms four months later.  It was also not part of the same course of conduct because it was not sufficiently connected or related as to be part of a single episode, spree, or ongoing series of offenses.  *See United States v. Amerson*, 886 F.3d 568, 574 (6th Cir. 2018) (quoting U.S.S.G. § 1B1.3 cmt. n.5(B)(ii)).

 In reaching that conclusion, we focus, as the Guidelines require, on three factors: regularity, similarity, and timing.  U.S.S.G. § 1B1.3 cmt. n.5(B)(ii).  Viewing these factors independently and together, they do not support a finding that the possession of the Sig Sauer in January and the other firearms in May were part of the same course of conduct.

*Regularity.*  There is no regularity here because there are only two instances of unlawful gun possession.  Two instances of unlawful conduct is not "regular" conduct.  As this court has

noted, "regularity is 'completely absent' where the government shows only one other offense." *Amerson*, 886 F.3d at 574 (quoting *United States v. Hill*, 79 F.3d 1477, 1484 (6th Cir. 1996)). The Government responds that there is more than one other instance here. At sentencing, the Government introduced seven photographs from Bowens' Facebook account showing him possessing firearms—"four instances in December 2016, two instances in January 2017, and one instance in May of 2017." But as Bowens' counsel noted at sentencing, and as the Government concedes on appeal, the Government is not seeking an enhancement based on those photos. *See* Oral Arg. at 27:23.

*Similarity*. These two instances were similar only in the broadest terms: they were both illegal gun possessions.[1] In this context, that is too broad. "When we have upheld relevant-conduct determinations involving illegal gun possessions, we have emphasized characteristics about the possessions that show similarity *beyond* the act of unlawfully possessing a gun." *Amerson*, 886 F.3d at 578 (emphasis added) (citing *United States v. Phillips*, 516 F.3d 479, 485 (6th Cir. 2008)). In other words, we look beyond "the general nature of the offense." *Id.*

For example, in *Phillips* the defendant was convicted of being a felon in possession of a firearm for an incident in 2004, and then his sentence was enhanced for unlawful possessions in 2002 and 2006. We affirmed. In discussing similarity, we noted that these other instances of possession were for the same offense, i.e., in all three the defendant was a felon in possession of a firearm. "More importantly," we added, the defendant's "repeated possession of firearms appear[ed] linked by a common purpose: self-defense." 516 F.3d at 485. We went on to explain that these instances of unlawful possession were similar because they had the same motivation and surrounding circumstances. In other words, there was more in common than just the nature of the offense.

That was not the case in *Hill* or *Amerson*, where the nature of the offense was the only similarity. In those cases, we held that the conduct was not relevant. *Hill* involved two instances

---

[1]We assume without deciding that the January possession was illegal. The Government presented evidence at trial that Bowens was a prohibited person in January because the Facebook evidence includes statements about smoking marijuana around that time period. But the jury was not asked, and did not need to find, whether Bowens was a regular and repeated user of marijuana in January 2017. All that was necessary for conviction was evidence that Bowens was a regular and repeated user in May 2017.

of possession with intent to distribute, but the earlier one was not relevant conduct because the only similarity was the type of drug sold. *See* 79 F.3d at 1484. Selling crack one year was not "relevant" to selling crack the next year just because both episodes involved selling crack; there had to be some other connection.

*Amerson* is even more on point. In that case, the defendant was charged with being a felon in possession of a firearm, and the government sought to enhance his sentence for an unlawful possession a few months earlier. 886 F.3d at 571–73. As in this case, these two instances were, in a sense, "similar." In both instances the defendant had unlawfully possessed a gun. But that was not similar enough. The court found that the earlier unlawful possession was not relevant conduct because the circumstances surrounding the earlier firearm possession were totally unrelated to the circumstances surrounding the offense of conviction. *Id.* at 575.

This case is more like *Hill* and *Amerson* than *Phillips*. There was nothing similar about Bowens' separate acts of possession *other* than the general nature of the offense. The two charged firearms were found with Bowens in a car while he was also in possession of marijuana. As a result of this arrest, police officers mined Bowens' Facebook to find images of him with these firearms and marijuana. The Sig Sauer was found months earlier in Bowens' home. It was not discovered as part of the police investigation into Bowens' Facebook posts, and the Government has not argued that the Sig Sauer is featured in those Facebook posts. Nor has the Government argued that marijuana was found in the same room (or house) as the Sig Sauer, or that Bowens ever had the Sig Sauer while riding in a car, or while smoking marijuana. Unlike *Phillips*, where the different instances of possession were at least related by a common purpose, nothing ties these possessions together. When we reversed the finding of relevant conduct in *Amerson*, we said: "[The government] failed to show that [the defendant's] [two] possessions were connected in any significant way. There were no common victims, common accomplices, common purpose, or similar modus operandi. And the possessions took place at different locations." 886 F.3d at 577 (citation omitted). We could say virtually the same thing here.

*Timing*. Finally, with respect to timing, while four months is not a very long span of time, it is not short enough to make up for the lack of regularity or similarity here. The three factors—similarity, regularity, and timing—are weighed on a sliding scale. *See Hill*, 79 F.3d at

1482. For example, if there are only two instances of conduct, and thus no regularity, there must be strong similarity and close temporal proximity to make up for it. *See id.*; *Amerson*, 886 F.3d at 574–75. In *Amerson*, the two instances of unlawful possession were three-and-a-half-months apart. The court noted that the defendant's "willingness to engage in the same type of criminal activity in a three-and-a-half-month period cuts in favor of a course-of-conduct finding." 886 F.3d at 574. But "a several-month gap between illegal possessions [was] not strong enough timing evidence to overcome a complete lack of regularity and prove that the possessions were part of the same course of conduct." *Id.* at 575. That is the case here. If there was stronger evidence of regularity or similarity, the four-month gap would not be a roadblock for finding relevant conduct, but without regularity or similarity this temporal proximity is not enough. Because of the lack of regularity and similarity, and weak temporal proximity, these two occurrences are not "relevant conduct" under the Guidelines. Therefore, the district court should not have applied the number-of-firearms enhancement under U.S.S.G. § 2K2.1(b).

Our review of the district court's relevant-conduct determination is not limited to review for plain error. According to the Government, plain error review applies because Bowens failed to raise the issue of relevant conduct at the sentencing hearing.[2] It is true that Bowens did not press his relevant-conduct argument at sentencing. But he did raise the issue squarely in a position paper objecting to portions of the presentence report, and the Government discussed it at least briefly at sentencing. This is enough to preserve the claim. In *United States v. Prater*, 766 F.3d 501 (6th Cir. 2014), this court considered a challenge preserved when it was raised in a paper but not squarely addressed at sentencing. 766 F.3d at 506–07. In fact, we have deemed a challenge preserved when it was addressed in an objection to the presentence report but left unsaid at sentencing—the same situation as the case here. *See United States v. Wilson*, 172 F.3d 50 (Table), 1998 WL 939987, at *3 (6th Cir. 1998). Finally, while Bowens' counsel did not respond to the district court's *Bostic* question when the court asked whether there were any further objections to discuss, *see United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), "neither

[2]Bowens did not waive this claim by intentionally conceding that possession of the Sig Sauer was relevant conduct, as the Government argues. In addressing a separate sentencing argument, Bowens' counsel argued that *if* Bowens' possession of the Sig Sauer is relevant conduct, the anticipated sentence for a state charge that led to the discovery of the Sig Sauer should run concurrently with his federal sentence. This was an alternative argument, not a concession.

the defense nor the government, in response to the *Bostic* question, has any obligation to raise objections already made." *United States v. Vonner*, 516 F.3d 382, 390 (6th Cir. 2008) (en banc).

Contrary to Bowens' second sentencing contention, however, there was no error in the district court's decision not to run Bowens' federal sentence concurrently with his anticipated state sentence for the January shooting. The district court did not abuse its discretion in refusing to run the sentences concurrently because the anticipated state sentence does not arise out of conduct related to the instant offense of conviction. Under the Guidelines, "the sentence for the instant offense shall be imposed to run concurrently" to an anticipated state term of imprisonment when the state term is for "another offense that is relevant conduct." U.S.S.G. § 5G1.3(c). The anticipated state sentence here is for an attempted first-degree murder charge arising out of a shooting in January 2017. As the above discussion of relevant-conduct principles shows, this January shooting/attempted murder is plainly not part of the same "course of conduct" or "common scheme or plan" as possession of firearms while using marijuana four months later. The two events are only "related" in the sense that investigation of the one (the shooting) led to evidence that was used in sentencing for the other (unlawful possession).

Finally, remand is also required because the judgment should be amended to reflect the oral sentence. Generally when there is a discrepancy the oral sentence controls. *United States v. Cofield*, 233 F.3d 406–07 (6th Cir. 2000). The Government concedes this point and agrees to a limited remand for the district court to correct its judgment.

V.

The judgment of conviction is affirmed. Bowens' sentence is vacated, and his case is remanded for sentencing in accordance with this opinion.